**Jack REID, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 36862.**

**Court of Criminal Appeals of Texas.**

April 15, 1964.

O. H. Harris, Dallas, for appellant.

Henry Wade, Dist. Atty., C. M. Turlington, Asst. Dist. Atty., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is driving while intoxicated; the punishment, 7 days in jail and a fine of $100.00.

Patrolman Jones of the Dallas Police testified that he was in his patrol car at approximately 7:30 p. m. on the night in question, when he observed a pickup truck ahead of him which was weaving from one traffic lane to another in front of other vehicles causing them to come to a "screeching halt" in order to avoid a collision with the pickup. The officer stated that when he brought the pickup to a halt and asked the appellant, who was the driver, for his driver's license, he "could smell a strong alcoholic beverage" about appellant's person. Jones further testified that when appellant got out of the pickup, he fell to one knee, held on to the side of the vehicle, and staggered as he walked to its rear. Jones also stated that appellant had defecated and urinated in his pants and expressed the opinion that he was intoxicated. A search of the pickup re--

vealed a case of beer in cans, an empty six-pack case, and several cans littered on the floor. Appellant was taken to the jail where the lieutenant on duty talked to him, and appellant was charged with "Investigation of DWI".

Appellant called his brother, Joe Reid, who testified that he and appellant had worked together on the day in question, that no alcoholic beverages were consumed, and that when appellant left him at 6:00 p. m., appellant was sober. Billy Joe McAdams testified that he saw appellant between 6:30 and 7:00 p. m. on the night in question, and stated that appellant did not appear intoxicated to him. Roger P. Benson testified that he saw appellant between 5:00 and 6:00 p. m. on said date and expressed the opinion that he was sober. Appellant, testifying in his own behalf, stated that he got home from work on the day in question, and, as his wife and children were not at home, he drove to a drive-in where he purchased a case of beer which he intended to take to a friend in an adjacent dry territory the following day, and while there consumed two cans of beer. He denied practically all of Officer Jones' testimony except that he was arrested by him.

In rebuttal, the State called Lieutenant Lord, who testified that he was on duty as the jail supervisor between 7:30 and 8:30 on the night in question, and that his records reflected that appellant was placed in jail during such period of time upon a charge of "Inv. DWI".

The facts will be more fully discussed in connection with appellant's contention advanced by brief and argument. He first contends that Officer Jones was permitted to relate certain statements, which were not in response to questions propounded to appellant by the officer, made by appellant between five and ten minutes after he had stopped the pickup, and while they were standing at the rear thereof. Jones testified that appellant first claimed to have a brother on the police force, finally denied such assertion, and stated that he did not consider himself too drunk to drive. It is appellant's contention that these statements were not part of the res gestae and therefore, were not admissible.

The trial court carefully excluded all statements made by appellant which he did not deem to have been spontaneously made. We find no admission of guilt in the statements attributed to appellant, and are not inclined to agree with counsel that the variance in the statements might be construed by the jury as an indication of intoxication. In any event, the statements made by appellant were admissible as part of the res gestae under the authority of Howell v. State, 171 Tex.Cr.App. 545, 352 S.W.2d 110; Jones v. State, 170 Tex.Cr. App. 171, 339 S.W.2d 677; and Lamkin v. State, 136 Tex.Cr.R. 99, 123 S.W.2d 662.

Appellant's next complaint is to the testimony of Lieutenant Lord and requires a more detailed discussion. The official records of the jail relating to appellant's incarceration were introduced without objection, and bore Lieutenant Lord's name. The following then transpired:

"Q Now, what does that indicate to you?

"A That I okayed his being placed in jail.

"MR. HARRIS: Now, Your Honor, this is what we're objecting to. This man testified that he don't remember Jack Reid and the mere fact that his name is on that record doesn't indicate that he okayed it. That just means his name is on that record.

I ask that the testimony be stricken and you instruct the jury to disregard it.

"THE COURT: I'll overrule that objection.

"MR. HARRIS: Note our exception.

"Q (By Mr. Reese) Now, what does it mean you passed on?

"A  It means that I personally interviewed the man, myself, and in my opinion he was intoxicated."

There was no objection to the last question and answer, and we cannot bring ourselves to conclude that the first objection was sufficiently explicit to point out to the court that appellant was objecting to Lieutenant Lord's opinion.

No reversible error appearing, the judgment is affirmed.